IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IVAN GARCIA (M39549),
Petitioner,

v.

No. 18-cv-5961

Judge Franklin U. Valderrama

KEVIN KINK, WARDEN,
LAWRENCE CORRECTIONAL CENTER
Respondent.

MEMORANDUM OPINION AND ORDER

Petitioner Ivan Garcia, an Illinois prisoner proceeding *pro se*, petitions this Court for a writ of habeas corpus under 28 U.S.C § 2254. R. 1, Habeas Pet.[1] Challenging his 2013 aggravated criminal sexual abuse conviction in the Circuit Court of Cook County, Garcia asserts three grounds for relief. He argues that his constitutional rights were violated when the trial court: (1) denied his motion for an evidentiary hearing to challenge the affidavit supporting a search warrant; (2) denied his requests to represent himself at trial; and (3) denied his requests to appoint him a different defense attorney. *Id.* Respondent having responded to the petition, R. 9, Resp.; Garcia having replied, R. 14, Reply; and this Court having received a complete record of Garcia's trial court proceedings in his criminal case as requested, R. 27, the Court enters the following ruling. Claims One and Three are denied. As to Claim Two, the Court finds that the claim is not procedurally defaulted, but grants Respondent's request to allow additional briefing on the merits of Claim Two.

---

[1]Citations to the docket are indicated by "R." followed by the docket number and then page number.

### Background[2]

### I.     Pretrial Proceedings

Garcia was arrested and charged with aggravated criminal sexual abuse of his 15-year-old niece (K.M.) after police executed a search warrant of his home. *People v. Garcia*, 2017 IL App (1st) 133398, ¶¶ 3–4 (Ill. App. Ct. 2017). The warrant was issued to search his apartment for evidence of drugs, drug paraphernalia, and drug transactions. *Id.* During the search, officers discovered drugs and $1,750 cash in Garcia's bedroom. *Id.* Officers also discovered, under Garcia's bed, a black box that contained a journal, a memory card, letters, and a vibrating ring. *Id.* The handwriting in the journal was described as "visually feminine" and, flipping through its pages, officers discovered photographs of Garcia and his niece K.M. *Id.* at ¶ 4. Upon determining that the journal was K.M.'s, officers obtained consent from her mother to search it and the box's other items. *Id.*

Garcia, represented by the public defender's office, moved to suppress the journal and other items, arguing that the box and its contents were outside the scope of the warrant. *Garcia*, 2017 IL App (1st) 133398, ¶¶ 4–5. The trial court denied the motion. *Id.* ¶ 4; *see also* R. 27-3, pg. 49–97.

After the denial of his suppression motion, Garcia filed a *pro se* motion seeking an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) based

---

[2]The background facts are taken from the state court record and the Illinois appellate court decision in Garcia's direct appeal. *See People v. Garcia*, 2017 IL App (1st) 133398 (Ill. App. Ct. 2017); *see also Hartsfield v. Dorethy*, 949 F. 3d 307, 309, n.1 (7th Cir. 2020) (federal habeas courts may take background facts from the state appellate court opinion "because they are presumptively correct on habeas review") (citing 28 U.S.C. § 2254(e)(1)).

2

on alleged falsehoods in the affidavit supporting the warrant.[3] *Garcia*, 2017 IL App (1st) 133398, ¶¶ 5, 16. The trial court denied Garcia's *pro se* motion for a *Franks* hearing, and the trial court granted Garcia's request to once again appoint counsel. *Id.* ¶ 5.

In November 2011, after both attorneys stated they were ready to argue the *Franks* motion, Garcia announced he wanted to proceed *pro se*. R. 27-3, pg. 155–56. He explained that his attorney, Assistant Public Defender (APD) Richard Kruss, neither wanted to file the *Franks* motion, nor used an investigator to obtain evidence to support it, both of which Kruss was forced to do after Garcia complained to Kruss' supervisor. *Id.* at 168–70. After admonishing Garcia about his charges, potential sentence, and the risks with proceeding *pro se*, *id.* at 156–65, the trial court granted Garcia's request, and allowed Kruss to withdraw as counsel. *Id.* at 168–70; *see also Garcia*, 2017 IL App (1st) 133398, ¶¶ 20–21.

In November 2012 (a year later), after continuances requested by both parties, Garcia argued his motion for a *Franks* hearing, which asserted that: Garcia's ex-girlfriend and mother of their two children was the affiant for the warrant's affidavit; she lied about purchasing cannabis from Garcia in order to obtain custody of their

---

[3]In *Franks*, the Supreme Court held that, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held" to determine the validity of the warrant. 438 U.S. at 155–56. To obtain such a hearing, "[t]he defendant must identify specific portions of the warrant affidavit as intentional or reckless misrepresentations and . . . show that if the deliberately or recklessly false statements were omitted, or if the deliberately or recklessly misleading omissions included, probable cause would have been absent." *United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013) (citing *Franks*, 438 U.S. at 171–71).

children; and the officer who drafted the affidavit for the search warrant knew about its misstatements. R. 27-4, pg. 71–98. The trial court denied the motion upon determining that, even if the allegedly false statements were removed, the affidavit still stated that drugs were purchased at Garcia's residence and, thus, still supported probable cause for the warrant. *Id.* at 93–98.

Immediately after denying the motion, the trial court stated that it intended to set a trial date at the next court hearing and directed Garcia to answer discovery. R. 27-4, pg. 98–99. Garcia then requested the appointment of an attorney other than a public defender. *Id.* at 99. The trial judge informed Garcia that: (1) if the court appointed an attorney, it would be the Cook County Public Defender's Office; (2) the court had no control over who in that office would be assigned the case; and (3) the court was not going to appoint standby counsel if Garcia proceeded *pro se*. *Id.* at 100–03. Garcia accepted the appointment of the Cook County Public Defender's Office, and APD Kruss was reassigned to the case. *Id.* at 103.

At the next status hearing on January 28, 2013, Garcia stated that he thought Kruss was withdrawing from the case, that Garcia was still representing himself, and that he wanted to file a motion to reconsider the denial of his *Franks* motion. R. 27-4, pg. 108–09. The trial court allowed Garcia to proceed *pro se* for his motion to reconsider, denied that motion, and reiterated that Kruss was representing Garcia. *Id.* at 110.

Two status hearings later, when the trial court was setting a trial date, Garcia again stated that he thought Kruss was withdrawing and that he wanted to represent

himself at trial. R. 27-4, pg. 117–18. The trial court, "find[ing] that the reason [Garcia

was] asking to go pro se . . . [wa]s to delay the trial," *id.* at 19, denied Garcia's request

and set the case for a jury trial several months later, *id.* at 119–22. Kruss and another

APD represented Garcia at trial. R. 27-5, 27-6, 27-7, 27-8.

## II. Garcia's Trial

The trial evidence, as described by the state appellate court, showed the

following:

> K.M. testified that defendant, then age 29, sexually abused her over a
> nine-month period starting when she was 15 years old. Trial evidence
> showed defendant repeatedly preyed on K.M. when no other adult was
> present, grabbing her or carrying her while she was asleep to his
> bedroom, where he touched her breasts and vagina. K.M. would push
> him away, but he persisted in these actions and eventually told her that
> she "couldn't be doing that to him," at which time he placed her hand on
> his erect penis. Some weeks after the initial violation, defendant again
> took K.M. to his bed. K.M. "pushed him away and then * * * just kind of
> gave up" because it "was happening for awhile," and she "didn't know
> what else to do." Defendant then penetrated K.M.'s vagina digitally,
> performed oral sex on her, and then had sex with her. He continued to
> have sex with her daily for months.
>
> During this period, defendant meanwhile acted as a father-like,
> boyfriend-like figure to K.M., teaching her to drive, attending her
> orchestra concerts along with K.M.'s siblings, and celebrating her
> birthday along with her siblings. Her mother, Virginia, was largely
> absent and thus defendant was the caretaker to Virginia's four children
> and also two of his own children.[ ] K.M. did not tell anyone about the
> abuse because she was scared of getting into trouble since she was only
> 15, and defendant was her uncle. K.M. identified lubricant tubes and a
> vibrating ring that defendant used while penetrating her. Defendant
> took photographs and videos of K.M., including videos of them having
> sex, on his cell phone. These images were recorded on a memory card
> stored in the lockbox. Both defendant and K.M. had a key to the box,
> and the two watched videos of them having sex on the computer. Some
> of these images and the video were published to the jury, with K.M.
> giving a graphic description of what occurred during their sex acts.

> K.M. was not his only victim. Her younger sister, D.M.[ ] testified that she slept in defendant's bed when she was only seven years old. He touched her vagina both over and under her clothes. He took her clothing off and digitally penetrated her. On about five separate occasions, he took off D.M.'s clothes and performed oral sex on her. D.M. also did not tell her mom or sister because she was afraid she would get in trouble, and defendant had instructed her not to tell anyone.

*Garcia*, 2017 IL App (1st) 133398, ¶¶ 6–8.

A jury found Garcia guilty of four counts of aggravated criminal sexual abuse of K.M.[4] *Garcia*, 2017 IL App (1st) 133398, ¶ 10. He was sentenced to consecutive terms totaling 20 years of imprisonment. *Id.*

## III. Direct Appeal

On direct appeal to the state appellate court, Garcia argued the trial court erred when it: (1) failed to properly admonish him about the charges against him and the minimum sentence he faced before allowing him to proceed *pro se* for his motion for a *Franks* hearing; (2) denied his motion for a *Franks* hearing; (3) denied his motion to suppress; (4) denied his requests to represent himself at trial; (5) failed to ask jurors during *voir dire* if they understood that the State had to prove Garcia's guilt beyond a reasonable doubt; (6) allowed impermissible hearsay; (7) allowed the State to introduce other-crimes evidence; and (8) limited Garcia's attorney's examination of a witness and then refused to issue a jury instruction about a prior inconsistent statement. *Garcia*, 2017 IL App (1st) 133398, ¶¶ 15–78.

---

[4]In a separate case, Garcia was found guilty of predatory criminal sexual assault and aggravated criminal sexual abuse of a minor for his offenses against D.M. *See People v. Garcia*, 2019 IL App (1st) 151244-U (Ill. App. Ct. 2019).

6

The state appellate court found that all but one of Garcia's claims were waived, but then denied all his claims on the merits. *Garcia*, 2017 IL App (1st) 133398, ¶¶ 12–80. Raising the same claims, Garcia filed a petition for leave to appeal (PLA), *see* R. 10-5, which the Illinois Supreme Court denied, *People v. Garcia*, 89 N.E.3d 759 (Ill. 2017). Garcia then filed his § 2254 petition currently before this Court.

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may "entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2254(a). A court may provide habeas relief only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or if the state proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *Id.* § 2254(d). "For a decision to be contrary to clearly established law, the decision must be 'opposite to that reached by [the Supreme] Court on a question of law' or different from a Supreme Court decision with 'materially indistinguishable facts.'" *Diaz v. Butler*, 2021 WL 25564, at *4 (N.D. Ill. Jan. 4, 2021) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). While a habeas petition challenges a petitioner's custody, it is not a mechanism to remedy errors of state law. *Id.* at *5 (citing *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002)).

"A state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (internal quotations marks and citations omitted). In other words, "a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition." *Diaz*, 2021 WL 25564, at *5. To fairly present a claim, "a petitioner must include both the operative facts and the controlling legal principles on which the claim is based, and a petitioner also must alert the state court that the claim raised is based on federal law." *Id.* (internal citation omitted). A § 2254 claim can be procedurally defaulted in two ways. *Hunt v. Mueller*, 2020 WL 5076662, at *5 (N.D. Ill. Aug. 27, 2020). The first occurs "when a prisoner fails to fully exhaust state court remedies for his federal claim and no longer has the ability to do so under the state's procedural laws." *Id.* (citing *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016)). The second is "where the state courts declined to address a petitioner's federal claims because the petitioner did not meet state procedural requirements." *Id.* (citing *Thomas*, 822 F.3d at 384. "'A state law ground is independent when the court actually relied on the procedural bar as an independent basis for its disposition' and 'is adequate when it is a firmly established and regularly followed state practice at the time it is applied.'" *Id.* (quoting *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012)). Put simply, "when a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural

rules . . ., that decision rests on independent and adequate state procedural grounds." *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010).

"A federal court on collateral review will not entertain a procedurally defaulted constitutional claim unless the petitioner can establish cause and prejudice for the default or that the failure to consider the claim would result in a fundamental miscarriage of justice. *Kaczmarek*, 627 F.3d at 591. "In order to demonstrate cause for failure to exhaust, [a petitioner] must demonstrate that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (internal quotation marks and citation omitted). "A fundamental miscarriage of justice occurs when a habeas petitioner establishes that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Diaz*, 2021 WL 25564, at *5 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

### Analysis

Garcia's § 2254 petition asserts three claims: (1) the trial court erred in denying a hearing to allow Garcia to demonstrate material falsehoods in the affidavit supporting the search warrant pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978); (2) Garcia was denied his right to proceed *pro se* at trial; and (3) the trial court erred by denying Garcia's request to appoint a different attorney.[5] R. 1, Habeas Pet. pg. 7–

---

[5]Respondent divides Claim Three into two separate claims: Garcia was denied his constitutional right to choose an attorney and his attorney provided ineffective assistance. R. 9, Resp. at 2–5. As later explained, dividing Garcia's Claim Three is unnecessary.

9

28. For the reasons below, Claims One and Three are denied, and the Court requests additional briefing for Claim Two.

## I.     Motion for a *Franks* Hearing

Claim One asserts that the state trial court violated Garcia's Fourth and Fourteenth Amendment rights when it denied his motion for an evidentiary hearing to challenge the search warrant under *Franks v. Delaware*, 438 U.S. 154 (1978). *See* R. 1, Habeas Pet. pg. 7–18 ; R. 14, pg. 4–7. Respondent contends this claim is barred from federal habeas review because Garcia had a full opportunity to litigate the claim in state court. R. 9, Resp. pg. 3–4 (citing *Stone v. Powell*, 428 U.S. 465 (1976)). Respondent is correct.

Under *Stone v. Powell*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim,[ ] a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494 (explaining that relief for a meritorious Fourth Amendment challenge to evidence is exclusion of the evidence, which is unavailable relief in a habeas proceeding). So long as the state court's consideration of the Fourth Amendment claim was not "a sham" and "the state court heard the claim, looked to the right body of case law, and rendered an intellectually honest decision," federal habeas review of the meris of the claim is barred. *Monroe v. Davis*, 712 F.3d 1106, 1114 (7th Cir. 2013).

Although Garcia did not receive a *Franks* evidentiary hearing to establish alleged falsehoods in the search warrant's affidavit, the state trial court did address

his motion for such a hearing. R. 27-4, pg. 71–98. The litigation of a motion for a *Franks* hearing itself suffices to bar federal habeas review of a Fourth Amendment challenge to the warrant affidavit. *See Brown v. Kemper*, 2019 WL 5068833, at *2 (E.D. Wis. Oct. 9, 2019); *Montenegro v. Bryant*, 245 F. Supp. 2d 926, 933 (C.D. Ill. 2003); *Brookhouse v. Ahitow*, 1997 WL 445936, at *4 (N.D. Ill. Aug. 1, 1997) (citing cases). Only if the state court's consideration of Garcia's *Franks* claim was so lacking "to imply refusal by the state judiciary to take seriously its obligation to adjudicate claims under the fourth amendment," may a federal habeas court consider the merits of the claim. *Cabrera v. Hinsley*, 324 F.3d 527, 531 (7th Cir. 2003) (quoting *Hampton v. Wyant*, 296 F.3d 560, 564 (7th Cir. 2002)).

The record in this case shows that the state trial court seriously considered Garcia's motion for a *Franks* hearing, including the exhibits and arguments he presented in support of his motion. R. 27-4, pg. 75–98; *see also Garcia*, 2017 IL App (1st) 133398, at ¶¶ 24–37 (the state appellate court also seriously considered the warrant-affidavit issue, including the English version of affidavits Garcia presented on appeal). Despite Garcia's contentions, *see* R. 14, Reply pg. 7–17, neither state court's treatment of the *Franks* issue can be considered "a sham" or so inadequate to allow federal habeas review of this claim. Claim One is thus denied as barred under *Stone v. Powell*, 428 U.S. at 494.

## II.    **Right to Proceed *Pro Se***

Garcia argues that the trial court violated his constitutional right to represent himself at trial. R. 1, Habeas Pet. pg. 19–23. More specifically, he maintains that his

11

requests to proceed *pro se* were not to delay trial, but instead, based on his dissatisfaction with APD Kruss and his desire to avoid Kruss' representation at trial. *Id.*

Respondent contends this claim is procedurally defaulted since the state appellate court denied it based on Garcia's failure to raise the issue in a post-trial motion for new trial. R. 9, Resp. pg. 3 (citing *Garcia*, 2017 IL App (1st) 133398, ¶¶ 12, 50). The Court disagrees with Respondent.

Federal habeas review of a constitutional claim is barred if the last state court to address the claim denied it based on a state procedural ground that "is independent of the federal question and adequate to support the judgment." *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "Independent" in this context means the state court "actually relied on the procedural bar as an independent basis for its disposition of the c[laim]." *Lee*, 750 F.3d at 693; *see also Harris v. Reed*, 489 U.S. 255, 261–62 (1989) (only a clear and express invocation of a state procedural bar blocks federal habeas review). A state procedural ground is "adequate 'when it is a firmly established and regularly followed state practice at the time it is applied.'" *Lee*, 750 F.3d at 693.

The state appellate court in Garcia's case began its discussion of his claims by noting that all but one was "forfeited by failure to raise a contemporaneous and/or posttrial objection." *Garcia*, 2017 IL App (1st) 133398, ¶ 12 (citing *People v. Enoch*, 522 N.E.2d 1124, 1130 (Ill. 1988) (to preserve an error in Illinois, a defendant must usually raise both a contemporaneous and a written posttrial objection)). The state

12

appellate court specifically addressed Garcia's self-representation claim; however, the court did not hold that it was forfeited. Instead, the court noted both the forfeiture issue and Garcia's asserted exception to forfeiture, and stated: "regardless of whether we view this on the merits or as a matter of plain error, we reach the same result." *Garcia*, 2017 IL App (1st) 133398, ¶ 50. The state court then addressed the claim's merits. *Id.*

Illinois' forfeiture rule for failing to include an issue in a post-trial motion can be an independent and adequate state ground preventing federal habeas review. *See Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005). But in Garcia's case, the state appellate court did not "'clearly and expressly' state[ ] that its judgment rest[ed] on a state procedural bar." *Lee*, 750 F.3d at 693. Instead, it noted that the exception to Illinois' forfeiture rule Garcia asserted—that the merits of a constitutional issue litigated at trial but not raised in a post-trial motion may be addressed on direct appeal if the issue could be raised in a post-conviction petition—did not apply because the self-representation issue was litigated before, but not during, trial. *Garcia*, 2017 IL App (1st) 133398, ¶ 50. The state appellate court, however, then determined that whether it reviewed the claim on the merits under the constitutional exception or for plain error, it would "reach the same result," and proceeded to the merits. *Id.*

The Court acknowledges that a state court may rely on a state procedural ground to deny a claim and then, in the alternative, determine that the claim lacks merit. *See Romero v. Battles*, 234 F.3d 1273 (7th Cir. 2000) ("so long as the court makes it clear that the state procedural bar is an independent and adequate ground

for denying the claim and that it is considering the federal claim only in the alternative . . . '[it] need not fear reaching the merits'" will erase its procedural ruling) (citation omitted). But that is not what the state appellate court did in this case. Instead, it noted the state procedural default and Garcia's asserted exception to it, and then proceeded to the merits upon determining that it made no difference "whether we view this on the merits or as a matter of plain error." *Garcia*, 2017 IL App (1st) 133398, ¶ 50. This Court cannot consider such a ruling "an explicit invocation of a state procedural bar" necessary for procedural default. *Sanders*, 398 F.3d at 579. Accordingly, Respondent's assertion that this claim is procedurally defaulted is misplaced.

Respondent's answer to the § 2254 petition only raises the procedural default defense and does not address the merits. *See* R. 9, Resp. pg. 3. Respondent requests, however, that if the Court determines that any of Garcia's claims are not procedurally defaulted, that Respondent be afforded "thirty days from the entry of the order . . . to address the merits of, and any other defenses to, such claims." *Id.* at 6. The Court agrees that Respondent should have an opportunity to address the merits of Garcia's claim of a Sixth Amendment violation with the trial court's denial of his requests to proceed *pro se* at trial. The Court will thus set a briefing schedule for the parties to address the claim's merits.

## III. Trial Court's Refusal to Appoint New Counsel for Garcia

On at least two occasions before trial, Garcia requested that the trial court appoint an attorney other than APD Kruss. R. 27-9, pg. 5–15 (March 31, 2011

hearing); R. 27-4, pg. 99–104 (November 20, 2012 hearing). Each time, Garcia argued that Kruss had provided ineffective assistance because he refused to conduct a proper investigation to prepare his motion for a *Franks* hearing and because of contempt Kruss displayed toward Garcia after he complained to Kruss' supervisor. *Id.* The trial court explained several times that because Garcia was indigent, it had to appoint the Cook County Public Defender's Office, and that the court could not appoint a different attorney unless a conflict of interest existed with that office representing Garcia, or that office was providing ineffective assistance of counsel. R. 27-9, pg. 12–13; R. 27-3, pg. 111–13; R. 27-4, pg. 99–100. Each time, the trial court found no conflict of interest or ineffective assistance. *Id.*

Garcia's § 2254 petition asserts that "[t]he trial court abused its discretion when it denied Garcia's request for an appointment of an attorney other than the Public Defender . . . where Ivan Garcia received ineffective assistance of counsel." R. 1, Habeas Pet. pg. 25. In support of this argument, Garcia points to—as he did in the state trial court—Kruss' "contempt for Garcia" after he complained to Kruss' supervisor; "a complete breakdown of communication" between them; and Kruss' "procedurally deficient and inadequate motion" for a *Franks* hearing.[6] *Id.* at 25–27.

---

[6]Respondent reads this claim as asserting two grounds for § 2254 relief: (1) ineffective assistance of counsel, which Respondent contends is unexhausted, and (2) denial of Garcia's constitutional right to counsel of choice, which Respondent states does not exist for indigent defendants. R. 9, Resp. pg. 4–5. But Garcia's § 2254 pleadings, even liberally construed, indicate he argues ineffective assistance of counsel only as a component of his claim of trial court error with its refusal to replace Kruss. *See* R. 1, Habeas Pet. pg. 25–28; R. 14, Reply pg. 20–27. The Court thus reads Respondent's arguments as asserting two grounds for denying Garcia's third § 2254 claim—that it is procedurally barred because he failed to fully exhaust state court remedies, and that it is without merit.

Garcia acknowledges that his substitution-of-counsel claim "was not presented to the Appellate or Illinois Supreme Court and it was not presented in a post-conviction petition." R. 1, Habeas Pet. pg. 28. A state prisoner must exhaust available state court remedies before seeking federal habeas relief or demonstrate the absence or ineffectiveness of such remedies. *See* § 2254(b). He "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Failing to properly exhaust state remedies results in a procedural default. *Id.* at 848 (citing *Coleman*, 501 U.S. at 731–32).

Notwithstanding the fact that Garcia gave neither the state appellate nor the state supreme court an opportunity to address his substitution-of-counsel claim, he argues that the denial of his motion for a *Franks* hearing prevented him from doing so. R. 1, Habeas Pet. pg. 28. Garcia posits that bringing this claim in state court would have been futile since the lack of merit with his *Franks* motion was cited as an indication of no ineffective assistance by Kruss to warrant replacing him. Garcia believes he had to establish that his *Franks* motion had merit to argue trial court error with refusing to replace Kruss for inadequately preparing the motion. *Id.*

Garcia's argument fails to raise any statutory exception to exhaustion in § 2254(b)(1)(B)(i)–(ii) (a habeas petition may be granted even if petitioner has not exhausted state court remedies if "there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant"). "[T]he pertinent question," with the availability or

effectiveness of state remedies, "is not whether the state court would be inclined to rule in the petitioner's favor, but whether there is any available state procedure for determining the merits of petitioner's claim." *Spreitzer v. Schomig*, 219 F.3d 639, 647 (7th Cir. 2000) (quoting *White v. Peters*, 990 F.2d 338, 342 (7th Cir. 1993)).

Nor does Garcia's futility argument assert either judicially-created exception to procedural default: (1) cause for the default and prejudice, or (2) a resulting fundamental miscarriage of justice if the claim is not reviewed, *i.e.*, that new evidence shows the prisoner is actually innocent. *See Coleman*, 501 U.S. at 750; *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016). "[C]ause . . . means some impediment to making an argument. That the argument seems likely to fail is not cause for its omission." *Turner v. United States*, 693 F.3d 756, 758 (7th Cir. 2012) (internal quotation marks and citation omitted). As to the fundamental miscarriage exception, Garcia presents no "new reliable evidence" of his innocence to establish this exception. *Thomas*, 822 F.3d at 827.

Garcia could have raised his substitution-of-counsel claim on direct appeal (along with his other Sixth Amendment claims and his challenge to the denial of his *Franks* motion) or in state post-conviction proceedings. It is undisputed that the state appellate court and state supreme court did not have an opportunity to address this claim. State courts must have the "first opportunity to address and correct potential violations of a prisoner's federal rights." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004); *see also Boerckel*, 526 U.S. at 844. This claim is thus procedurally

defaulted, and Garcia satisfies none of the exceptions to allow federal habeas review of its merits.

Notwithstanding the default, the claim is without merit. Respondent correctly notes that "there is no established federal law or United States Supreme Court holding that guarantees an indigent defendant the right to a choice of counsel." *Miller v. Smith*, 765 F.3d 754, 762 (7th Cir. 2014) (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) ("the right to counsel of choice does not extend to defendants who require counsel to be appointed for them"). Admittedly, Garcia's claim is not that he was denied the ability to choose counsel, but that he was forced to proceed with an attorney who exhibited "contempt for Garcia" after he complained to his attorney's supervisor, and with whom Garcia experienced "a complete breakdown of communication." R. 1, Habeas Pet. pg. 25; R. 14, Reply pg. 24–25.

But the Sixth Amendment right to effective assistance of counsel does not include "the right to a *meaningful attorney-client relationship*," *Morris v. Slappy*, 461 U.S. 1, 13 (1983) (emphasis in original) (internal quotes and citation omitted). Rather, the Sixth Amendment requires "reasonably effective assistance" of counsel free of a conflict of interest. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Cuyler v. Sullivan*, 446 U.S. 335, 345–49 (1980). While Garcia asserts his attorney was inadequate with investigating and preparing the motion for a *Franks* hearing, he has never argued that counsel provided constitutionally ineffective assistance.

Garcia's § 2254 Claim Three is denied as procedurally defaulted and, alternatively, as without merit.

18

**Conclusion**

The Court denies Garcia's Claims One and Three. As to Claim Two, the Court finds that the claim is not procedurally defaulted, but grants Respondent's request to address the merits. Respondent is ordered to answer Claim Two on the merits by August 18, 2022. Garcia may reply by October 3, 2022. The Clerk of this Court is instructed to: (1) terminate Kevin Kink as Respondent; (2) add David Mitchell, Warden of Pinckneyville Correctional Center, as Respondent; and (3) alter the case caption to *Garcia v. Mitchell*.

Franklin U. Valderrama
United States District Judge

Dated: July 18, 2022