### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IVAN GARCIA (M39549),
      Petitioner,

    v.

DAVID MITCHELL, WARDEN,
Pinckneyville Correctional Center,

      Respondent.

No. 18-cv-5961

Hon. Franklin U. Valderrama

### MEMORANDUM OPINION AND ORDER

State prisoner Ivan Garcia (Garcia), proceeding *pro se*, petitions the Court for federal habeas corpus relief under 28 U.S.C. § 2254 for his 2013 Cook County criminal sexual abuse conviction. R. 6, Petition.[1] His petition asserts three claims. *Id.* at 7–28. This Court's July 18, 2022 Opinion: (1) denied Claims One and Three; (2) determined that Claim Two was not procedurally defaulted, as Respondent had argued; and (3) directed additional briefing on the merits of Claim Two, which asserts that Garcia was denied his Sixth Amendment right to represent himself at trial. R. 30, 7/18/22 Opinion. Respondent has addressed the merits of Claim Two. R. 36. Garcia, despite receiving two extensions of time, filed no reply. R. 38; R. 40. For the reasons below, the Court denies Claim Two and declines to issue a certificate of appealability for all of Garcia's claims.

### Background

This Court's July 18, 2022, Opinion set out the relevant facts for both Garcia's

---

[1]Citations to the docket are indicated by "R." followed by the docket number and then page number.

pretrial and trial proceedings. 7/18/22 Opinion at 2–6. Only a discussion of his pretrial proceedings is needed to address Claim Two's merits. The relevant facts of those proceedings are taken from the state court record, *see* R. 27, and the state appellate court decision in Garcia's direct appeal, *see People v. Garcia*, 2017 IL App (1st) 133398 (Ill. App. Ct. 2017).

## I.     Pretrial Proceedings

Garcia was arrested and charged with aggravated criminal sexual abuse of his 15-year-old niece (K.M.) after incriminating items were discovered during the execution of a search warrant of his home. *Garcia*, 2017 IL App (1st) 133398, ¶¶ 3–4. The warrant was issued to search his apartment for evidence of drugs, drug paraphernalia, and drug transactions. *Id.* During the search, officers discovered drugs and $1,750 cash in Garcia's bedroom. *Id.* Officers also discovered, under Garcia's bed, a black box that contained a journal, a memory card, letters, and a vibrating ring. *Id.* The handwriting in the journal was described as "visually feminine" and, flipping through its pages, officers discovered photographs of Garcia and his niece K.M. *Id.* ¶ 4. Upon determining that the journal was K.M.'s, officers obtained consent from her mother to search it and the box's other items. *Id.*

Garcia moved to suppress the journal and other items, arguing that the box was outside the scope of the warrant. *Id.* The public defender's office, specifically Assistant Public Defender (APD) Richard Kruss, represented Garcia at the motion to suppress hearing. *Garcia*, 2017 IL App (1st) 133398, ¶¶ 3–5, 52. The trial court denied the motion. *Id.* ¶ 4; *see also* R. 27-3, pg. 49–97.

After the denial of the motion, Garcia further challenged the search based on alleged falsehoods in the affidavit supporting the warrant. That motion sought an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (a defendant may seek a hearing to establish deliberate falsehoods in the affidavit supporting a search warrant). *See Garcia*, 2017 IL App (1st) 133398, ¶ 5.

In November of 2011, after both APD Kruss and the assistant state's attorney informed the trial court they were ready to argue the *Franks* motion, Garcia announced he wanted to proceed *pro se*. R. 27-3, pg. 155–56. He explained that Kruss neither wanted to file the *Franks* motion, nor used an investigator to obtain evidence to support it, both of which Kruss was forced to do after Garcia complained to Kruss' supervisor. *Id.* at 168–70. The trial court, after admonishing Garcia about his charges, potential sentence, and the risks with proceeding *pro se*, *id.* at 156–65, granted Garcia's request, and allowed Kruss to withdraw as counsel. *Id.* at 168–70.

Approximately one year later, in November 2012, after several continuances requested by both parties, Garcia argued his motion for a *Franks* hearing, which asserted the following: Garcia's ex-girlfriend and mother of their two children was the affiant for the warrant's affidavit; she lied about purchasing cannabis from Garcia in order to obtain custody of their children; and the officer who drafted the affidavit for the search warrant knew about its misstatements. R. 27-4, pg. 71–98. The trial court denied the motion, reasoning that, even if the allegedly false statements were excluded, the affidavit still stated that drugs were purchased at Garcia's residence and, thus, still supported probable cause for the warrant. *Id.* at 93–98.

Immediately after denying the motion, the trial court informed the parties that it intended to set a trial date at the next court hearing and directed Garcia to answer discovery. R. 27-4, pg. 98–99. Garcia then requested the appointment of an attorney other than a public defender. *Id.* at 99. The trial court informed Garcia: that if the court appointed an attorney, it would be the Cook County Public Defender's Office; that the court had no control over who in that office would be assigned the case; and that the court was not going to appoint standby counsel if Garcia proceeded *pro se*. *Id.* at 100–03. Garcia accepted the appointment of the Cook County Public Defender's Office, and APD Kruss was reassigned to the case. *Id.* at 103.

At the next status hearing on January 28, 2013, Garcia stated that he thought Kruss was withdrawing from the case, that Garcia was still representing himself, and that he wanted to file a motion to reconsider the denial of his *Franks* motion. R. 27-4, pg. 108–09. The trial court: allowed Garcia to proceed *pro se* for his motion to reconsider; denied that motion; and reiterated that Kruss was representing Garcia. *Id.* at 110.

Two statuses later, when the trial court was setting a trial date, Garcia again stated that he thought Kruss was withdrawing and that he wanted to represent himself at trial. R. 27-4, pg. 117–18. The trial court, "find[ing] that the reason [Garcia was] asking to go *pro se* . . . [wa]s to delay the trial," *id.* at 19, denied Garcia's request and set the case for a jury trial several months out, *id.* at 119–22. Kruss and another assistant public defender represented Garcia at trial. R. 27-5 to R. 27-8.

4

## II.     Direct Appeal

On direct appeal, Garcia argued the trial court erred when it: (1) failed to properly admonish him about the charges and minimum sentence he faced before allowing him to proceed *pro se* for his *Franks* motion; (2) denied his motion for a *Franks* hearing; (3) denied his motion to suppress; (4) denied his requests to represent himself at trial; (5) failed to ask jurors during *voir dire* if they understood the State had to prove guilt beyond a reasonable doubt; (6) allowed impermissible hearsay; (7) allowed other-crimes evidence; and (8) limited Garcia's attorney's examination of a witness and then refused to instruct jurors about prior inconsistent statements. *Garcia*, 2017 IL App (1st) 133398, ¶¶ 15–78.

The state appellate court noted that all but one of Garcia's claims were waived, but then denied all of his claims on the merits. *Garcia*, 2017 IL App (1st) 133398, ¶¶ 12-80. Raising the same claims, Garcia filed a petition for leave to appeal (PLA), R. 10-5, which the Illinois Supreme Court denied, *People v. Garcia*, 89 N.E.3d 759 (Ill. 2017). Garcia then filed his § 2254 petition currently before this Court.

## III.     Garcia's § 2254 Petition

Garcia's habeas petition, as noted above, asserts three claims: (1) the trial court erred when it denied his request for an evidentiary hearing under *Franks*, 438 U.S. 154, to show material falsehoods in the search warrant's affidavit; (2) he was denied his right to represent himself at trial; and (3) the trial court erred by denying his request to appoint a different attorney. Petition at 7–28. As also previously noted,

this Court's July 18, 2022 Opinion denied Claims One and Three, and requested additional briefing on Claim Two. For the reasons below, Claim Two is denied.

## Analysis

Garcia's Claim Two argues the trial court violated his constitutional right to represent himself at trial. Petition at 19–23. More specifically, he contends his requests to proceed *pro se* were not to delay trial, but instead, were based on his dissatisfaction with APD Kruss and his desire to avoid Kruss' representation at trial. *Id.*

### I.    Legal Standards

The Court's § 2254 review begins with "the decision of the last state court to rule on the merits of a prisoner's claim." *Franklin v. Sims*, 538 F.3d 661, 664 (7th Cir. 2008); *see also Wilson v. Sellers*, 584 U.S. 122, 128–29 (2018). When a state court has addressed the merits of a claim, federal habeas relief is available only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." § 2254(d)(1)-(2). Also, "a determination of a factual issue made by a State court shall be presumed to be correct," which the § 2254 applicant may rebut with "clear and convincing evidence." § 2254(e)(1).

In this case, the last state court to provide a reasoned decision on Garcia's claim that he was denied his right to represent himself is the state appellate court's

decision on direct appeal. *See Garcia*, 2017 IL App (1st) 133398, ¶¶ 51–56. Before

turning to that decision, the Court briefly addresses the constitutional right at issue.

The Sixth Amendment provides that:

> In all criminal prosecutions, the accused shall enjoy the right . . . to be
> informed of the nature and cause of the accusation; to be confronted with
> the witnesses against him; to have compulsory process for obtaining
> witnesses in his favor, and to have the Assistance of Counsel for his
> defence.

U.S. Const. amend. VI. Although the Amendment makes no explicit reference to a

right of self-representation, its wording, which "grants to the accused personally the

right to make his defense," *Faretta v. California*, 422 U.S. 806, 819 (1975),

"necessarily implies the right," *id.* at 832. "To thrust counsel upon the accused,

against his considered wish . . . violates the logic of the Amendment." *Id.* at 820.

Therefore, a criminal defendant has a constitutional right to waive counsel and

represent himself at trial. *Faretta*, 422 U.S. at 807. *Faretta* did not address the timing

of the request to proceed *pro se*. The Seventh Circuit, however, has held that a motion

for self-representation is timely if made before the jury is empaneled, "unless made

for the purpose of delaying or disrupting the trial." *United States v. Johnson*, 23 F.3d

665, 668 (7th Cir. 2000). The right to proceed *pro se* is not absolute. That is, a

defendant must "knowingly and intelligently forgo[ ] his right to counsel." *McKaskle

v. Wiggins*, 465 U.S. 168, 173 (1984) (citing *Faretta*, 422 U.S. at 835). Not only that,

but he must be: "able and willing to abide by rules of procedure and courtroom

protocol." *Id.* "The right of self-representation is not a license to abuse the dignity of

the courtroom," and a "trial judge may terminate self-representation by a defendant

who deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46 (citing *Illinois v. Allen*, 397 U.S. 337 (1970)). "[T]he government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Martinez v. Ct. of Appeal of Cal., Fourth Dist.*, 528 U.S. 152, 162 (2000).

## II.     The Illinois Appellate Court's Decision

With the above legal standards in mind, the Court turns to the state appellate court's resolution of Garcia's Sixth Amendment self-representation claim. The appellate court stated in relevant part:

> [A] defendant has a constitutional right to represent himself in criminal proceedings. *People v. Baez*, 241 Ill.2d 44, 115, 349 Ill. Dec. 165, 946 N.E.2d 359 (2011). However, he may lose that right by engaging in serious and obstructionist misconduct, or if he cannot make a knowing and intelligent waiver. *People v. Fritz*, 225 Ill.App.3d 624, 626, 167 Ill. Dec. 666, 588 N.E.2d 307 (1992). The requirement that a defendant make an unequivocal request to waive counsel aims to prevent the defendant from manipulating or abusing the system by going back and forth between his request for counsel and his wish to proceed *pro se*. *Baez*, 241 Ill.2d at 116, 349 Ill. Dec. 165, 946 N.E.2d 359. A court must determine whether the defendant truly desires to represent himself and has definitively invoked his right of self-representation, and must indulge in every reasonable presumption against waiver of the right to counsel. *Id.* Each case will be judged on its particular facts and circumstances, including the defendant's background, experience, and conduct. *Id.* We review the matter for an abuse of discretion. *Id.*
>
> In reviewing the record as a whole, we cannot say the trial court abused its discretion in declining his second request to act *pro se* given defendant's back-and-forth and obstructionist conduct in this case. Some background is necessary. The public defender's office represented defendant on his motion to suppress in 2011. Some months later, defendant cited communication problems with his attorney, and the trial court directly addressed defendant's concerns in a hearing outside the State's Attorney's presence, ultimately declaring that defendant's attorney was not ineffective. The court noted that if defendant wanted

8

another public defender, defendant would need to address the matter to the public defender's office. The record indicates defendant did just that, having numerous conversations with the office supervisor over some three months. At a July 2011 hearing, as the attorneys were proceeding on the other-crimes motion by the State, defendant requested a continuance to speak with the office supervisor one more time. The court denied that request and noted that another public defender was not likely to take the place of defendant's attorney, Richard S. Kruss. The court stated that defendant could hire a private lawyer, but if indigent, the court was required to appoint the public defender assigned to defendant's case. In November 2011, defendant firmly announced he wished to proceed *pro se* on the *Franks* motion, which his defense counsel had already filed. As set forth above, the trial court allowed defendant to do so.

The court admonished defendant that if he changed his mind, the court could reappoint the public defender's office, but then stated several times that once the matter went to trial, defendant could not change his mind and ask for a lawyer at the last minute. The court stated defendant would not receive special consideration simply because he was proceeding *pro se*. The court then patiently allowed defendant to review evidence and prepare his motions. As of July 2012, some eight months after defendant requested to proceed while acting *pro se*, the court provided defendant another month to present his *Franks* motion. Defendant requested standby counsel to consult with regarding his motion, but the court noted it had already declared standby counsel would not be available when defendant decided to go *pro se*. Defendant filed his *Franks* motion in September and the State filed its response in October. At the November 2012 hearing, as the parties were preparing to argue on the motion, defendant requested a continuance to review photographs of his home yet again. Defendant also noted he needed additional time to review the State's cases. The court denied these requests, noting defendant had already seen the photographs and had four weeks to review the State's response.

After defendant's *Franks* motion was denied at this same hearing, the court declared it would be setting the matter for trial at the next court date. It was at this point that defendant asked for a lawyer to be appointed other than the public defender. The court again stated there was no evidence the public defender had been ineffective or there was a conflict of interest. The court declared that either defendant accepted the public defender's office or he had to represent himself. Defendant then stated he wished to have the public defender's office represent him. Public defender Kruss appeared again on defendant's behalf.

At the next court date [i]n January 2013, the court allowed defendant to file *pro se* his motion to reconsider the *Franks* hearing since he had represented himself on the matter, but then noted public defender Kruss had been appointed at the last court date and was representing defendant. Two days later, defense counsel in defendant's presence noted the matter was ready to be set for trial. On February 8, 2013, the next court date, defendant stated that he was "under the impression that Mr. Kruss was going to withdraw from the case" and declared he was going to proceed *pro se*. The court denied defendant's request, noting the case was to be set for trial:

> "I find that the reason why you're asking to go pro se once again is to delay the trial. You have a right to have a trial, and you have a right to represent yourself, but you can't go back and forth between representing yourself or not to delay the proceedings."

When the court asked defendant whether he wanted a bench or jury trial, defendant stated he wanted to file a motion and have a hearing on the consent to search the lockbox discovered in his room. The court again asked if defendant wanted a bench or jury trial, to which defendant responded that he would like to proceed *pro se* "even without any continuance." The court indicated a jury trial.

Viewing the above-stated facts and defendant's conduct as a whole, defendant cannot overcome the presumption against waiver. Defendant's vacillation following the *Franks* hearing actually militated against permitting him to represent himself *pro se* at trial. Defendant's final request was not in the least unequivocal given all th[at] preceded it. We further defer to the trial court's finding that defendant was seeking to delay proceedings by flip-flopping about counsel yet again on the day the case was to be set for trial and by requesting a continuance on his long-ago decided motion to suppress. As *People v. Burton*, 184 Ill.2d 1, 24, 234 Ill. Dec. 437, 703 N.E.2d 49 (1998), noted, the timing of a defendant's request is also significant. A number of courts have held that a defendant's request is untimely where it is first made just before the commencement of trial, after trial begins, or after meaningful proceedings have begun. *Id.*; *see also People v. Rasho*, 398 Ill.App.3d 1035, 1042, 338 Ill. Dec. 855, 925 N.E.2d 711 (2010) (upholding the denial of self-representation where the defendant's request to proceed *pro se* on the day of trial was not timely and was accompanied by an implicit motion for a continuance). Defendant's behavior in that regard was consistent with his constant wish for continuances throughout the

pretrial period. In short, defendant's contention fails on the merits and under plain error.

*Garcia*, 2017 IL App (1st) 133398, ¶¶ 51–56.

### A. The state appellate court's decision was not contrary to clearly established Supreme Court law

As previously noted, Garcia cannot obtain federal habeas relief unless he first establishes the state appellate court's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "was based on an unreasonable determination of the facts." § 2254(d)(1)-(2). "A state-court decision is contrary to th[e Supreme] Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in [the Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of th[e] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

The state appellate court, though citing only state cases,[2] correctly stated the standard set by the Supreme Court applicable to Garcia's Sixth Amendment claim: "a defendant has a constitutional right to represent himself in criminal proceedings," but "he may lose that right by engaging in serious and obstructionist misconduct, or if he cannot make a knowing and intelligent waiver" of his right to counsel. *Garcia*, 2017 IL App (1st) 133398, ¶ 51; *see also McKaskle*, 465 U.S. at 173 ("an accused has

---

[2]To comply with § 2254(d)(1), "a state court does not need to cite, or even be aware of, [Supreme Court] precedents 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Hanson v. Beth*, 738 F.3d 158, 163 (7th Cir. 2013) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

a Sixth Amendment right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol"); *Faretta*, 422 U.S. at 834 n.46 (a "trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct"). Garcia cannot satisfy the "contrary to" part of § 2254(d)(1)'s review standard.

### B. The state appellate court's decision neither unreasonably applied *Faretta*, nor was based on an unreasonable determination of facts

To be an unreasonable application of Supreme Court law under 28 U.S.C. § 2254(d)(1), "the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (quoting *Williams,* 529 U.S. at 409). This "requires 'a state prisoner [to] show that the state court's ruling . . . was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt v. Titlow*, 571 U.S. 12, 19-20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Garcia must demonstrate there "is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents." *Harrington*, 562 U.S. at 102. According to the Seventh Circuit, "[a]s long as we are satisfied that the [state appellate court] took the constitutional standard seriously and produce[d] an answer within the range of defensible positions, we will affirm the district court's decision to deny the writ." *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019) (quoting *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006)).

As to § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "Rather, the state court's determination of the facts must have been an unreasonable error in light of the evidence presented to that court." *Collins v. Gaetz*, 612 F.3d 574, 586 (7th Cir. 2010).

Considering the state-court record, the Illinois Appellate Court's decision was not unreasonable. That court's denial of Garcia's *Faretta* claim was based on two determinations: (1) "Defendant's final request [to proceed *pro se*] was not in the least unequivocal given all th[at] preceded it," and (2) deference had to be given to "the trial court's finding that defendant was seeking to delay proceedings by flip-flopping about counsel yet again on the day the case was to be set for trial and by requesting a continuance on his long-ago decided motion to suppress," which the state appellate court considered to be "consistent with his constant wish for continuances throughout the pretrial period." *Garcia*, 2017 IL App (1st) 133398, ¶ 56. Neither conclusion was unreasonable.[3]

---

[3]Whether § 2254(d)(2)'s "unreasonable determination of fact" or § 2254(e)(1)'s presumption of correctness of state court factual determinations applies to the state appellate court's two determinations enumerated above is unclear. But since Garcia cannot satisfy the § 2254(d)(2) standard, this Court "do[es] not need to decide whether th[ose] determination[s] should be reviewed under the arguably more deferential standard set out in § 2254(e)(1)." *Wood*, 558 U.S. at 301; *see also Brumfield v. Cain*, 576 U.S. 305, 322 (2015) ("We have not yet 'defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)'") (quoted case omitted).

### 1. Equivocalness of Garcia's Second Request to Proceed *Pro Se*

The state appellate court's conclusion that Garcia's "final request was not in the least unequivocal given all th[at] preceded it" is supported by the record.[4] *Garcia*, 2017 IL App (1st) 133398, ¶ 56; *see also* § 2254(d)(2). After the trial court denied Garcia's motion for a *Franks* hearing, it announced it would be setting a trial date at the next hearing and directed Garcia to answer discovery or lose the ability to call certain witnesses and raise certain defenses. Garcia responded he wanted the court to appoint an attorney for him. R. 27-4, pg. 98–99. He first asked for an attorney other than the Public Defender's Office. After the trial court again explained that it had to appoint that office for an indigent defendant unless there was a conflict of interest or ineffective assistance by that office, Garcia requested standby counsel. *Id.* at 100–02. The trial court denied that request and told Garcia: "Either you accept the services of the Public Defender's Office or you go it alone." *Id.* at 102–03. Garcia accepted the appointment of that office, and APD Kruss was reassigned to the case. *Id.* at 103.

---

[4]The Supreme Court in *Faretta* did not specifically require that a defendant's self-representation request had to be unequivocal. The Court observed that "Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel," *Faretta*, 422 U.S. at 835, but has never expressly required a clear, unequivocal invocation of the right. The Supreme Court, however, has expressly required that a defendant "knowingly and intelligently" waive his right to counsel before proceeding *pro se*, *id.*, and that courts must "indulge every reasonable presumption against waiver," *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (citation omitted); *Brewer v. Williams*, 430 U.S. 387, 404 (1977); *see also Raulerson v. Wainwright*, 469 U.S. 966, 970–71 (1984) (Marshall, J., dissenting) (noting that lower courts must "determine[] whether there has been a sufficiently clear request to proceed pro se. . . . If a request is ambiguous, the trial judge need not respond, because there has been no clear indication of a desire to waive a right to counsel"). Accordingly, requiring that a defendant's invocation of his right to proceed *pro se* be clear and unequivocal—which federal and Illinois courts do, *see McGhee v. Dittmann*, 794 F.3d 761, 770 & n.17 (7th Cir. 2015) (collecting cases); *People v. Burton*, 703 N.E.2d 49, 59 (Ill. 1998) (same)—is neither contrary to nor an unreasonable application of *Faretta*.

At the next court date on January 28, 2013, Garcia stated that Kruss "told me he was going to withdraw from the case," and that he was still representing himself. R. 27-4, pg. 109. Kruss explained that he was still representing Garcia, but that Garcia wanted to file a motion to reconsider the denial of his *Franks* motion, which he had argued *pro se*. *Id.* at 109. The trial court allowed Garcia, himself, to file his motion for reconsideration. After denying the motion, the trial court stated: "Now, Mr. Kruss represents you sir." *Id.* at 110.

At the next court hearing two days later, Garcia returned discovery materials to the State, and APD Kruss announced, in Garcia's presence, that he was ready for a trial date to be set but wanted to wait until the ASA assigned to the case could be present. Garcia made no mention that he wanted to represent himself. R. 27-4, pg. 114–15.

At the next court hearing nine days later,[5] Kruss announced he was ready to set a trial date, but that Garcia "ha[d] expressed a willingness to, perhaps, proceed *pro se* again." R. 27-4, pg. 117. The following exchange then occurred:

> The Court: All right. So bench or jury trial indicated?
>
> Defendant: Your Honor, there appears to be some confusion. On the January 28th court date I was under the impression that you were aware or made aware that Mr. Kruss was going to withdraw from the case. Somehow I guess you didn't allow him to withdraw, but I'm going to proceed with this case pro se.
>
> The Court: No, you're not. No, you're not. On January 27th, Mr. Kruss was indicating that you would proceed pro se because you wanted to file

---

[5]The cover page with the date of the hearing is missing from the record provided to this Court. *See* R. 27-4, pg. 116–17. Presumably, the hearing occurred on February 8, 2013, the date set at the January 30, 2013, hearing. *Id.* at 115. Every other hearing occurred on the date set by the court at the previous hearing, and the record provides no reason to believe otherwise.

a motion to reconsider the denial of your motion for a *Franks* hearing. Mr. Kruss normally, as your attorney, makes the decision on whether or not to file any motions, and his position was on that day that he was not going to proceed because he wasn't planning on filing that motion to reconsider.

Is that accurate Mr. Kruss?

Mr. Kruss: Yes, judge. And to make the record clear, Mr. Garcia litigated that matter before the Court pro se.

The Court: Exactly. And so what I determined is because you litigated the matter pro se, you should have an opportunity to file your motion to reconsider that matter that you had litigated, and so notwithstanding that Mr. Kruss was your lawyer on January 27th, I allowed you to file the motion to reconsider. As you know – I'm sorry, we're talking about January 30th.

As you know, I reconsidered that motion, and I denied it. Mr. Kruss still remains your lawyer. There is an answer to discovery on file. I've given you the opportunity to go pro se once. I admonished you. You went pro se for a while. You told me you could not do it and you wished to have the Public Defender's Office re-appointed. So I did that. We made sure that the discovery is done. Today is the day that we set the case for trial.

I find that the reason why you're asking to go pro se once again is to delay the trial. You have the right to have a trial, and you have the right to represent yourself, but you can't go back and forth between representing yourself or not to delay the proceeding.

I want the record to be clear that I did a motion to suppress evidence on February 24, 2011. I did a hearing for proof of other crimes on July 15, 2011.

Mr. Kruss, when did you file your answer to discovery?

Mr. Kruss: Judge, I think I filed it on January 30th of this year, Judge. I may have done it – I thought I had done it earlier, but I did file it on January 30th of this year.

The Court: Very well.

And so understand that this matter would have ordinarily been set for trial after the July 15th, 2011 matter, but you wanted to go pro se so we could hear your motion for a *Franks* hearing, and so the case languished for more than a year until I ruled on your motion for a *Franks* hearing on November 20, 2012, and I denied it. After that you told me on January 28th that you wanted the Public Defender's Office to represent you. Mr. Kruss operated in short order and filed his answer to discovery.

Now my question to you, sir, because I don't believe that anything has changed since the last time you say that you wanted to – the Public Defender's Office to represent you, and because, sir, we are ready to set the matter for trial, and because I find that the reason you're asking for the right to represent yourself pro se is to delay these proceedings, I will deny it, and I'll deny it for that reason.

Defendant: That's not true, your Honor.

The Court: So the question before you, sir, is a bench trial or a jury trial. Which one do you want?

Defendant: Your Honor, first, like I said, I would like to – part of it was I was going to file a motion to challenge the consent which was made by a third party. That's one of the motions I want to file, and I want to have it on the record. My sister signed the consent to search a safe in my room under my bed, I would like to file a motion and to have a hearing regarding that issue.

The Court: Now, bench or jury trial indicated?

Defendant: Even with that, your Honor, I do not wish – I would still go pro se without delaying any – I can still go pro se without delaying –

The Court: Bench or jury trial indicated?

Defendant: without delaying any –

The Court: Do you want a bench trial or do you want a jury trial?

Defendant: Your Honor, I would still like to represent myself even without any continuance.

The Court: Do you want a bench trial or do you want a jury trial?

Defendant: Would I still be able to represent myself, your Honor?

The Court: All right. Let's do this. Let's indicate a jury trial.

Dkt. 27-4, pg. 117–22. The hearing proceeded with the trial judge and attorneys setting a date for trial (May 13, 2013). *Id.* at 122. Garcia again spoke up: "Your Honor, for the record, I wish to continue representing myself. I do not want Mr. Kruss." *Id.* Replying, the trial court stated: "I'm sorry, I've heard you Mr. Garcia. If you say it ten more times, you've made your record. I've made my record, and I'm not going to repeat myself. By agreement, May 13th . . . for the jury." *Id.*

No further discussions about Garcia representing himself occurred at subsequent hearings or at trial, where he was represented by APD Kruss and another assistant public defender. Nor was a written motion seeking self-representation filed.

Given this record, the state appellate court's determination—that "Defendant's final request [to proceed pro se] was not in the least unequivocal," *Garcia*, 2017 IL App (1st) 133398, ¶ 56—cannot be considered unreasonable. *See* § 2254(d)(2). As observed by the state appellate court, after Garcia represented himself for a year to prepare and argue his motion for a *Franks* hearing, and after the trial court denied the motion and announced its intent to set a trial date at the next hearing, he requested that an attorney be appointed for him and, albeit begrudgingly, accepted the re-appointment of the Public Defender's Office and APD Kruss. R. 27-4, pg. 99–103. Garcia again raised the issue about representation at the next two status hearings. Both times, however, he presented the issue not as a request to proceed *pro*

*se*, but instead, as an announcement of his belief that "Kruss was going to withdraw," a statement not supported by Kruss at those hearings. *Id.* at 109, 117.

Garcia and Kruss may have discussed Kruss' withdrawal (perhaps to force appointment of a different attorney or to allow Garcia to file another *pro se* motion, or for some other reason). But Garcia's discussion with the trial court about Kruss withdrawing is not the same as waiving the right to counsel altogether. "[C]onduct which could be construed as 'result[ing] from a desire for different counsel' does not clearly and unequivocally express a desire for self-representation." *McGhee v. Dittmann*, 794 F.3d 761, 770 (7th Cir. 2015) (quoting *United States v. Loya-Rodriguez*, 672 F.3d 849, 857 (10th Cir. 2012)).

The Court acknowledges that several courts have held that a defendant's request to proceed *pro se* is unequivocal when it is made as the only alternative to obtaining a different defense attorney. *See Adams v. Carroll*, 875 F.2d 1441, 1444–45 (9th Cir. 1989) ("Adams made his preference clear from the start: He wanted to represent himself if the only alternative was representation by" the assistant public defender assigned to his case); *see also Williams v. Bartlett*, 44 F.3d 95, 100 (2d Cir. 1994) ("a defendant is not deemed to have equivocated in his desire for self-representation merely because he expresses that view in the alternative [and] simultaneously requests the appointment of new counsel"); *United States v. Morgan*, 659 Fed. Appx. 444, 446 (9th Cir. 2016); *Buhl v. Cooksey*, 233 F.3d 783, 794 (3d Cir. 2000). "Common sense suggests (and experience confirms) that nearly every request to proceed *pro se* will be based upon a defendant's dissatisfaction with counsel." *Buhl*,

19

233 F.3d at 794 (noting that Faretta requested to proceed *pro se* because of his dissatisfaction with his attorney).

But Garcia's above-described interactions with the trial court did not clearly state his desire to proceed *pro se* if his only alternative was representation by Kruss. That may have been Garcia's intent, and the record well demonstrates his displeasure with Kruss during pretrial proceedings. *See* R. 27-9, pg. 4–16; R. 27-3, pg. 168–70; R. 27-4, pg. 99–103. Yet whether Garcia was telling the trial court that he wanted to waive his right to an attorney altogether if the only attorney he could have was Kruss, or whether Garcia was attempting to secure Kruss' withdrawal is unclear from the record. *See* R. 27-4, pg. 109, 117–23.

This Court, however, is not tasked with making a factual finding about Garcia's intent. Rather, all the Court can do is address the reasonableness of the state appellate court's equivocalness determination based on the record before that court. § 2254(d)(2); *Collins*, 612 F.3d at 586. Based on the record, this Court cannot say that the state court's conclusion—that Garcia's "final request was not in the least unequivocal given all th[at] preceded it," *Garcia*, 2017 IL App (1st) 133398, ¶ 56— "'rest[ed] upon fact-finding that ignore[d] the clear and convincing weight of the evidence.'" *Gage v. Richardson*, 978 F.3d 522, 528 (7th Cir. 2020) (quoting *Corcoran v. Neal*, 783 F.3d 676, 683 (7th Cir. 2015)).

Garcia cannot satisfy § 2254(d)'s standards with respect to the state appellate court's decision about his equivocalness with waiving his right to counsel. This basis alone suffices to deny § 2254 relief for Claim Two.

## 2. The State Courts' Finding that Garcia's Request to Proceed *Pro Se* was for the Purpose of Delay

The state appellate court's denial of Garcia's *Faretta* claim, in addition to being based on its determination his latest requests to proceed *pro se* were not unequivocal, rested on its "defer[ence] to the trial court's finding that defendant was seeking to delay proceedings by flip-flopping about counsel yet again on the day the case was to be set for trial and by requesting a continuance on his long-ago decided motion to suppress." *Garcia*, 2017 IL App (1st) 133398, ¶ 56. This determination is also supported by the record.

Garcia began proceeding *pro se* on November 10, 2011. R. 27-3, pg. 156. Eight months later, at the July 27, 2012, status hearing—after delays occasioned both by the State with tendering discovery items and by Garcia seeking to view additional items—the trial court expressed its desire "to move forward on this case," and pressed Garcia as to when he was going to file his motion for a *Franks* hearing. R. 27-9, pg. 29–33. Garcia responded he could file the motion in three weeks. *Id.* at 33. At the August 24, 2012, status hearing, Garcia "ask[ed] for one more continuance." R. 27-4, pg. 57–61. A month later, on September 28, 2012, he filed his *Franks* motion. *Id.* at 64–65. The trial court set a briefing schedule for the State's response and Garcia's reply, and set November 20, 2012, as the date for arguments on the motion. *Id.* at 67–69.

On November 20, 2012, the assistant state's attorney announced she was ready for argument. Garcia, however, stated he was not because he wanted to view additional photographs. R. 27-4, pg. 73. The trial court stated that Garcia had

previously seen the photographs, and that it was "ready to hear your argument." *Id.* at 73. Garcia then stated he was not ready because he wanted to establish that, contrary to the State's indication, an object in one of the photographs was not a table but, instead, a heater. *Id.* at 74. The trial court "accept[ed] as true that it's a heater. I'm not going to continue the case for that. And so, are you ready to argue?" *Id.* "I'm still not," replied Garcia, because he wanted to look at two cases cited by the State in its response. *Id.* The ASA explained that she filed her response on October 22, 2012 (four weeks earlier), and that she "mailed the defendant a copy of all the case law cited in [her] response." *Id.* The trial court noted that Garcia had the response's cited cases "for four weeks," and that it was "not going to continue this case for a reply." *Id.*

Garcia ultimately presented his arguments for his motion for a *Franks* hearing—that the mother of his children, to gain custody, provided false information about buying drugs from Garcia in her affidavit supporting the search warrant. *See* R. 27-4, pg. 75–89. After hearing arguments from the State and again from Garcia, the trial court denied the motion. *See id.* at 89–98.

The trial court then informed both parties that it planned to set a trial date at the next status hearing and directed Garcia to answer discovery. R. 27-4, pg. 98–99. Garcia responded that he was still waiting to see certain discovery items, and that he wanted to file a motion to reconsider the denial of his *Franks* motion. *Id.* The trial court, after stating it had already addressed the discovery issues, told Garcia to file his motion to reconsider with his discovery answers. *Id.* at 99. The court further

22

informed him that his failure to answer discovery could limit his ability to call witnesses and assert affirmative defenses. *Id.* Garcia then asked for the appointment of counsel—first, someone other than a public defender; then stand-by counsel; and then, after the denial of these requests, the public defender's office. *Id.* at 99–103.

Three status hearings later, on February 8, 2013—after Garcia returned discovery materials to the State, and after APD Kruss answered discovery and announced he was ready for the setting of a trial date—Garcia announced he intended to proceed *pro se*. R. 27-4, pg. 117-24. After the trial court refused the request and stated its belief that Garcia was making the request to delay trial, Garcia explained that he wanted to file a motion challenging a consent to search from K.M.'s mother (Garcia's sister) and "to have a hearing on that issue." *Id.* at 120-21. He further stated "[t]hat's one of the motions that I want to file." *Id.* at 120. When the trial court continued to press him "bench or jury trial," Garcia then stated that he could "go pro se without delaying" and "without any continuance." *Id.* at 121.

According to the record described above, every time the trial court attempted to move the case forward in 2012 and 2013—by directing Garcia to file his *Franks* motion, then to argue it, and then later to choose between a judge or jury trial—Garcia responded he needed additional time to examine discovery, review cases, file more motions, and seek at least one additional pretrial evidentiary hearing. Given this record, the state appellate court's determination—that Garcia's request to proceed *pro se* on the day his case was being set for trial "was consistent with his

constant wish for continuances throughout the pretrial period"—was not unreasonable. *See Garcia*, 2017 IL App (1st) 133398, ¶ 56.

This Court acknowledges, as Garcia argues, that the record also illustrates Garcia's dissatisfaction with Kruss' representation, his desire to obtain a different attorney, and his desire to challenge the search every way he could. *See* Petition pg. 19-–3; *see also* R. 27-9, pg. 4–16, 35; R. 274, pg. 99–103. Nevertheless, between July 2012 and February 2013, Garcia repeatedly asked for continuances for a variety of reasons, usually in response to the trial court moving the case along.

Thus, the state appellate court's deference to the trial court's finding that Garcia sought to proceed *pro se* to delay proceedings[6] was not unreasonable given the record. *See Davis v. Ayala*, 576 U.S. 257, 274 (2015) ("determinations of credibility and demeanor lie peculiarly within a trial judge's province," and reviewing "judges cannot on the basis of a cold record easily second-guess a trial judge's decision about likely motivation") (internal quotes and cites omitted); *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) (same). Garcia has not satisfied § 2254(d)(2), nor § 2254(e)(1)'s more deferential standard to the extent it applies, with respect to the state appellate court's

---

[6]It should be noted that the record in this case shows that the trial judge was impatient and short with Garcia on multiple occasions. *See* R. 27-9, pg. 19–35; R. 27-4, pg. 72–75, 99–103, 108–11, 117–22. But a fair reading of the entire record shows that the trial court was stern about moving the case forward. *See generally* R. 27. The Supreme Court "has long recognized that a [trial] court possesses inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016). While courts have held that "[d]elay per se is not a sufficient ground for denying a defendant's constitutional right of self-representation," *Burton v. Davis*, 816 F.3d 1132, 1142 (9th Cir. 2016) (cite omitted), they have also stated that a "trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel." *United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir. 2000) (citation omitted).

acceptance of the trial court's finding that Garcia's requests to proceed *pro se* was to delay trial.

### C. Intent to Delay as a Reason to Deny Self-Representation Request

Even though the state courts' determination that Garcia's 2013 requests to proceed *pro se* were for the purpose of delay was not unreasonable, this Court must address if such an intent suffices to deny his requests to represent himself months before his trial was set to begin. In *Faretta*, the Supreme Court held that a Sixth Amendment right to self-representation exists, but provided little guidance when that right may be denied. Only in a footnote did the Court state that "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834, n.46 (citing *Illinois v. Allen*, 397 U.S. 337 (1970)). "The right of self-representation is not a license to abuse the dignity of the courtroom." *Faretta*, 422 U.S. at 834 n.46. The Supreme Court has never addressed whether a valid finding that a defendant seeks to proceed *pro se* to delay court proceedings justifies denying a request for self-representation.

But each time the Court has addressed the right to self-representation since *Faretta*, it has noted the trial court's need to ensure that a trial proceeds in an orderly and efficient manner. In *Martinez v. Court of Appeal of California, Fourth Appellate Dist.,* when determining the absence of a self-representation right on direct appeal, the Court noted that, "[e]ven at the trial level . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." 528 U.S. 152, 162 (2000); *see also Indiana v.*

*Edwards*, 554 U.S. 164, 177 (2008) ("'[t]he Constitution would protect none of us if it prevented the courts from acting to preserve the very processes that the Constitution itself prescribes'") (quoting *Allen*, 397 U.S., at 350 (Brennan, J., concurring)).

In *Marshall v. Rodgers*, addressing a state trial court's refusal to reappoint counsel, the Court held that the approach by California courts was not unreasonable. 569 U.S. 58, 62–63 (2013). That approach involved the consideration of several factors, including: "the reasons for the request, the length and stage of the proceedings, and the disruption or delay [that] might reasonably be expected to follow the granting of such a motion." *Id.*

Thus, even though the Supreme Court has never addressed how obstructionist a defendant's conduct must be to deny his request to represent himself, the Court has stressed several times the need of a trial court to ensure "the integrity and efficiency of the trial." *Martinez*, 528 U.S. at 162; *see also Faretta*, 422 U.S. at 834 n.46. Numerous courts, including the Seventh Circuit, have held that a motion for self-representation is not valid if "made for the purpose of delaying or disrupting the trial." *United States v. Johnson*, 223 F.3d 665, 668 (7th Cir. 2000) (citing *Moore v. Calderon*, 108 F.3d 261, 264 (9th Cir. 1997)); *United States v. Krug*, 822 F.3d 994, 1000 (8th Cir. 2016) ("a defendant is not entitled to use the right of self-representation as a tactic for delay") (internal quotes and citations omitted); *United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006) (same); *United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir. 2000); *see also People v. Johnson*, 453 P.3d 38, 59 (Cal. 2019) (collecting cases from other states).

"Given the general standard articulated in *Faretta*," such an approach is not unreasonable. *Hill v. Curtin*, 792 F.3d 670, 679 (6th Cir. 2015). "'The more general the [federal] rule, the more leeway . . . courts have in reaching outcomes in case-by-case determinations.'" *Saechao v. Eplett*, 991 F.3d 789, 792 (7th Cir. 2021) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Accordingly, the state appellate court's reliance on the trial court's finding—that Garcia sought to proceed *pro se* to delay trial—as a reason to affirm the denial of his self-representation requests was not an unreasonable application of clearly established Supreme Court law. The state appellate court "took the constitutional standard seriously and produce[d] an answer within the range of defensible positions." *Felton*, 926 F.3d at 464.

Garcia's Claim Two is thus denied. Having already denied his other § 2254 claims, the Court denies Garcia's § 2254 petition.

### III.    Notice of Appeal and Certificate of Appealability

Garcia is advised that this is a final decision ending his case in this Court. If he wishes to appeal, he must file a notice of appeal in this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of the entry of this judgment, *see* Fed. R. Civ. P. 59(e), and suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A

Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). Neither the time to file a Rule 59(e) motion nor the time to file a Rule 60(b) motion can be extended. *See* Fed. R. Civ. P. 6(b)(2).

The Court declines to issue a certificate of appealability. Garcia cannot make a substantial showing of the denial of a constitutional right, or that reasonable jurists would debate, much less disagree, with this Court's resolution of Garcia's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2)); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## Conclusion

The Court denies Garcia's Claim Two on the merits and, having denied his other claims in its July 18, 2022, opinion, the Court denies Garcia's § 2254 petition. The Court also declines to issue a certificate of appealability. Judgment shall be entered in favor of Respondent. Civil case terminated.

Franklin Val

_____
Franklin U. Valderrama
United States District Judge

Date: June 11, 2024